UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA
ex rel, GLORIA LONGEST,

                                      Plaintiff,

-vs-                                                          Case No.  6:03-cv-816-Orl-31JGG

DYNCORP and DYNCORP
INTERNATIONAL, LLC,

                                      Defendants.
_____/

# ORDER

This matter comes before the Court on the Motion to Dismiss Amended Complaint (Doc.

48) filed by the Defendants, Dyncorp and Dyncorp International, LLC, as well as the memorandum

in opposition (Doc. 58) filed by the Plaintiff, Gloria Longest ("Longest").  The Court held a

hearing on the matter on November 17, 2005.

## I.    Background

As this matter comes before the Court on a motion to dismiss, the Court relies on the

pleadings for the relevant facts.  In this case, the Court relies on the facts alleged in Longest's

Amended Complaint (Doc. 39).

### A.    The Parties

Longest began working for Dyncorp in 1997, serving as a Senior Accountant and as an

Accounting Manager before she was fired in April 2003.  (Doc. 39 at 3). She worked for Dyncorp

at its Patrick Air Force Base location, which was run by Dyncorp International LLC.  Longest's

duties included reviewing invoices, supervising accounting clerks, reviewing and approving vouchers for payment by vendors, and performing sample audits.  (Doc. 39 at 7-8).

Dyncorp International LLC is a wholly owned subsidiary of Dyncorp, which has contracted with the United States Department of State to provide cocaine-eradication assistance to such countries as Pakistan, Colombia, Peru, Bolivia, Venezuela and Panama.[1]  (Doc. 39 at 2).  Under a series of contracts, each entitled the "International Narcotics and Law Enforcement Affairs Contract" (the "INLEA Contracts"), Dyncorp is entitled to reimbursement for certain payments made to or on behalf of its employees.  (Doc. 39 at 2).  Longest contends that Dyncorp has repeatedly violated the INLEA Contracts through such practices as double-billing and seeking reimbursement for non-reimbursable expenses, resulting in improper payments from the United States totaling millions of dollars.  (Doc. 39 at 2).

B.      Procedural History

Longest filed her original complaint, under seal, on May 29, 2003.  (Doc. 1).  On October 12, 2004, after granting several extensions, the Court ordered the United States (henceforth, the "Government") to decide on or before April 14, 2005 whether it would intervene in this action. (Doc. 19).  On April 15, 2005, the Government indicated that it had not yet completed its investigation into this matter and would therefore not be intervening "at this time."  (Doc. 20 at 1). The Court  ordered this case unsealed and (Doc. 16) on August 15, 2005, Longest filed her Amended Complaint.  (Doc. 39).

──────────────────

[1]Throughout her Amended Complaint, Longest refers to the Defendants collectively as "Dyncorp."  For simplicity's sake, the remainder of this opinion will do so as well.

C.    Longest's Claims

Longest proceeds primarily under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*
In Count One, she alleges that Dyncorp violated 31 U.S.C. § 3729(a)(1) and (2) by knowingly
presenting false claims for payment to the Government and by using false records or statements to
get such claims paid.  (Doc. 39 at 66).  In Count Two, she alleges that Dyncorp violated 31 U.S.C.
§ 3730(h) by terminating her in retaliation for her complaints about the false claims.  (Doc. 39 at
67).  And in Count Three, Longest alleges that her termination also violated Florida's
whistleblower statute, Fla. Stat. § 448.102.

## II.    Standards

In ruling on a motion to dismiss, this Court must view the complaint in the light most
favorable to the Plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  The Court will take the
complaint's allegations as admitted by the Defendant and will liberally construe them in the
Plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  The Court will not dismiss a
complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot
prove any set of facts that support a claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Generally, civil complaints filed in federal court need only state "a short and plain
statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a).
However, in actions under the False Claims Act, the complaint must also satisfy Federal Rule of
Civil Procedure 9(b).  *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301,
1308-09 (11th Cir. 2002).  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the
circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent,
knowledge and other condition of mind of a person may be averred generally."  Fed. R. Civ. P.

9(b).  This particularity requirement exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  The Rule 9(b) requirements, however, may not abrogate the concept of notice pleading.  *Id.*

To state a claim under the False Claims Act with particularity, the complaint must allege facts as to time, place, and substance of the defendant's alleged fraud and the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.  *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1012 (11th Cir. 2005).  Under the False Claims Act, liability arises from the submission of a fraudulent claim rather than simply the disregard of government regulations or a failure to maintain proper internal policies.  *Id.* at 1012.  "The act of submitting a fraudulent claim to the government is the *sine qua non* of a False Claims Act violation.  *Id.* (internal quotation omitted).

**III.    Application**

In her 70-page Amended Complaint, Longest describes ten alleged schemes – several of which involve multiple sub-schemes – used by Dyncorp to defraud the Government.  These schemes included: seeking double reimbursement for travel expenses; seeking reimbursement for inflated or unearned per diem, danger pay, and post differential allowances; charging the Government for services without verifying documentation, such as time cards; seeking reimbursement for employee living expenses such as cable television and lawn services that were not payable under the INLEA Contract; failing to return relocation expenses advanced by the Government when employees did not relocate or  resigned shortly after relocating; failing to return payroll expenses advanced by the Government but never paid by Dyncorp; seeking reimbursement

-4-

for severance payments and associated attorneys' fees, which were not payable under the INLEA Contract; seeking reimbursement for employee expenses without supporting documentation; seeking reimbursement for compensation to unapproved employees; charging the Government for purported expenses that were actually embezzled by a Dyncorp employee, and failing to reimburse the Government upon discovering the embezzlement; and seeking reimbursement for a variety of other general expenses either not earned or not permitted under the INLEA Contracts, including double-charging for vacation pay, seeking reimbursement for rental car damages that were paid by an insurance company, and seeking reimbursement for employees' personal travel and cell phone expenses.  (Doc. 39 at 10-65).

The INLEA Contracts required the Defendants to submit "Cost Reports" to the government, identifying costs incurred each month and providing year-to-date totals.  (Doc. 39 at 6).  The Cost Reports were based on the information in bi-weekly "Public Vouchers," invoices that were submitted to the government.  (Doc. 39 at 6).  Longest and other auditors performed sample audits in which they "reviewed costs claimed during specific periods of time regarding a sampling of employees."  (Doc. 39 at 8).  Longest contends that she and other audit personnel uncovered the various schemes during these sample audits, among other things.  (Doc. 39 at 8).  Longest also contends that she and co-workers reported the audit results to their superiors, who did not order more comprehensive audits or enact controls to prevent further overcharges.  (Doc. 39 at 8).

A.      Count I

The Defendants raise a host of objections to the first count of Longest's Amended Complaint.  Their primary argument is that it fails to provide sufficient particularity regarding the "false claims for payment" and therefore runs afoul of Rule 9(b).  (Doc. 21 at 8-12).  The

Defendants compare the instant case to the situation in *Clausen*, a False Claims Act case in which the plaintiff contended the defendant was billing for unneeded lab tests.  Clausen detailed six separate schemes involving improper tests, attached documents listing patients and the tests that they were receiving, and alleged that the tests "resulted in the submission of false claims to the United States."  *Clausen*, 290 F.3d at 1304-06.  After the District Court found that Clausen's complaint was not sufficiently detailed regarding the alleged false claims, *id.* at 1305, Clausen amended his complaint and included a blank claim form – known as a "Form 1500" – but provided little else in the way of additional support:

> But still no copies of a single actual bill or claim or payment were provided.  No amounts of any charges by [the Defendant] were identified.  No actual dates of claims were alleged.  Not a single completed Form 1500 was provided.  No policies about billing or even second-hand information about billing practices were described, other than to state that electronic Form 1500s with certain medical test codes were used.  Basically, Clausen did not add any billing information to support his allegation that actual false claims were submitted for payment, such as the amount of any charges.  Instead he attached one blank claim form and alleged that certain tests would have been billed on this form with certain test and diagnostic codes filled in.

*Id.* at 1306.  As the Defendants point out, the United States Court of Appeals for the Eleventh Circuit found that Clausen's amended complaint failed to satisfy his pleading requirement:

> Rule 9(b)'s directive that "the circumstances constituting fraud or mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.

*Id.* at 1311.

 Unlike the situation in *Clausen*, however, Longest has not "simply and without any stated reason" alleged that the Defendants submitted false claims to the government.  For example,

Longest describes how the Defendants would receive monthly billing statements for employee travel expenses and would post the appropriate debits to employee receivable accounts. (Doc. 39 at 11). The posting of these debits would also result in the corresponding amounts being included on the bi-weekly Public Voucher invoices, which the Defendants submitted to the government for payment. (Doc. 39 at 11-12). She describes how Dyncorp invoiced the Government approximately $500,000 in travel expenses in September, October, and November 2002, and alleges, on information and belief, that the Government paid the invoices. (Doc. 39 at 12). She then recounts how Dyncorp re-invoiced the Government for the same travel expenses, usually splitting each charge into two or more charges to make the double-billing more difficult to detect. (Doc. 39 at 12-13). Finally, she provides a chart, complete with employee initials, invoice numbers, and amounts, that purports to demonstrate dozens of instances of this double-billing, listing both the initial invoice number and the numbers of the subsequent, duplicative invoices. (Doc. 39 at 14-17).

In contrast to the plaintiff in *Clausen*, Longest has provided a wealth of information about Dyncorp's alleged double-billing for travel expenses. Although Longest does not list every conceivable detail about Dyncorp's allegedly fraudulent acts, she has listed enough to provide the "indicia of reliability" about each facet of these schemes that the law requires. *See Clausen*, 290 F.3d at 1311. This is particularly so given Longest's familiarity with Dyncorp's contractual requirements and billing procedures. *See Corsello,* 428 F.3d at 1013 (analyzing *Clausen* and stating that because "Clausen was a 'corporate outsider,' his failure to provide a credible set of facts to support his vague allegations rendered his complaint deficient under Rule 9(b).").

Generally speaking, Longest provides more detail regarding the travel expense double-billing than she does regarding the other alleged schemes.  Dyncorp contends that Longest must satisfy Rule 9(b)'s particularity requirement as to each distinct scheme she asserts in the Amended Complaint.  (Doc. 48 at 6).  More particularly, Dyncorp contends that as to each scheme, Longest must specify how and when the false claims were presented (Doc. 48 at 11-12), the individuals involved (Doc. 48 at 12-14), the precise time frame (Doc. 48 at 14-15) and every action or omission at issue (Doc. 48 at 15-16).

In support of its assertion that Rule 9(b) requires particularity as to every element of every scheme, Dyncorp cites generally to *Clausen*.  (Doc. 48 at 6).  But that case announces no such requirement.  And the Court's own research has not uncovered any case reciting such a rule.  Rather, a close reading of *Clausen* suggests the opposite conclusion.  In responding to the dissent's complaint that False Claims Act plaintiffs were being required to provide a prohibitively long list of information, the *Clausen* majority stated that it had listed "some of the types of information that might have helped Clausen state an essential element of his claim with particularity "but was not mandating all of that information for any of his claims.  *Clausen* at 1312 n.21.  The majority went on to explain that "[a]lthough Clausen has provided none of these items of information here, *some* of this information for at least *some* of the claims must be pleaded in order to satisfy Rule 9(b)."  *Id.* (emphasis added).  Implicitly, then, Clausen could have satisfied Rule 9(b) without providing any additional information as to some of his claims.

Rule 9(b) exists to prevent spurious charges and provide notice to defendants of their alleged misconduct, not to require plaintiffs to meet a summary judgment standard before proceeding to discovery.  "When Rule 9(b) applies to a complaint, a plaintiff is not expected to

actually *prove* his allegations." *Clausen* at 1313 (emphasis in original).  Once a plaintiff has

satisfied Rule 9(b) as to one scheme, the purposes behind the rule have been served  Requiring the

level of specificity sought by the Defendants would undermine the False Claims Act's goal of

encouraging people with knowledge of undisclosed fraud to come forward. *Clausen* at 1310 n.17.

Moreover, in regard to the remaining allegations, Longest has provided far more than mere

conclusory allegations of fraudulent schemes or false claims for payment.  She routinely provides

specific examples, complete with dates, employee initials, and amounts, of instances in which

Dyncorp paid its employees and billed the Government for items not subject to reimbursement

under the INLEA Contracts.  And her allegations are buttressed by her status as a corporate insider

with extensive familiarity with Dyncorp's billing practices and contractual obligations.  To the

extent such a finding might be required, the Court finds that Longest has provided sufficient

indicia of reliability to satisfy Rule 9(b) as to every scheme alleged in the first count of her

Amended Complaint.

B.      Count II

Dyncorp complains that in Count II fails to state a claim for retaliation under the False

Claims Act retaliation.  The retaliation provisions of the False Claims Act provide protection to

any employee

> who is discharged ... or in any other manner discriminated against in the terms and
> conditions of employment by his or her employer because of lawful acts done by
> the employee on behalf of the employee or others in furtherance of an action under
> this section, including investigation for, initiation of, testimony for, or assistance in
> an action filed or to be filed under this section.

31 U.S.C. § 3730(h).  Dyncorp argues that Longest does not allege that she ever took any steps in furtherance of a False Claims Act action and that internal complaints to her supervisor are not protected activities under that act.  Doc. 48 at 16-17.

Dyncorp's first argument is not supported by the case law.  In *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140 (11th Cir. 1996), the plaintiff had been fired after testifying at a hearing regarding a billing scheme involving one of her employer's customers.  Her testimony suggested that her employer had assisted and participated in the scheme.  *Id.* at 1143.  On summary judgment, Childree conceded that the Government never considered bringing a False Claims Act case against her employer and that she had not considered bringing such a case before her termination.  *Id.*  The District Court sided with the defendant, stating that the language of the act required Childree to "show some nexus between her conduct and the furtherance of a potential False Claims Act action."  *Id.* at 1144.  Because neither she nor the United States had filed or considered filing an action at the time she testified, the district court found that no such potential False Claims Act action existed, and granted summary judgment to her employer.

On appeal, the Eleventh Circuit found that the standard set by the district court was too demanding.  After analyzing the "action filed or to be filed " language of § 3730(h), the *Childree* court held that it did not require that a False Claims Act action ever have been filed before a whistleblower would be protected from retaliation.  *Id.* at 1146.  In addition, the court noted that "a retrospective test which furnished no protection unless an action was eventually filed would preclude protection in every case where the evidence of wrongdoing was so compelling that the employer settled before an action was filed."  *Id.*  The *Childree* court held that "§ 3730(h) protection is available not only where a false claims action is actually filed but also where the

filing of such an action, by either the employee or the government, was 'a distinct possibility' at the time the assistance was rendered." *Id.* at 1146. Because the facts at the time Childree testified at least arguably suggested a distinct possibility that the government might pursue such an action, the appellate court reversed the summary judgment.

Under *Childree*, Longest is protected from retaliation so long as there was merely a distinct possibility of the filing of a False Claims Act at the time she was allegedly complaining about overcharges. She need not even have known the False Claims Act existed to qualify for its protection. *See id.* (stating that "nothing in the language of § 3730 suggests that its protections are limited to those who were motivated by it."). As such, requiring her to plead the specific steps that she took in furtherance of a False Claims Act action would be improper. It is enough that she asserts that she was discriminated against in the terms and conditions of her employment by Dyncorp because of "lawful acts done by her in furtherance of an action under the False Claims Act." (Doc. 39 at 67).

Dyncorp's second argument as to Count II also does not hold up. There are certainly cases in which courts have found that a plaintiff's internal complaints are insufficient to trigger the protections of the False Claims Act. *See, e.g., Shekoyan v. Sibley Intern. Corp.*, 309 F.Supp.2d 9, 16 (D.D.C. 2004) (listing cases). However, none of those cases announces that such complaints, as a matter of law, can never trigger the act's protections, and therefore Dyncorp's argument is not appropriate for disposition on a Rule 12 motion. In addition, the Court notes that Longest has alleged that beginning in late 2002, she reported Dyncorp's allegedly fraudulent activities to the United States Department of State. (Doc. 39 at 68). Clearly, Longest contends that she engaged in more than merely "internal complaints." Although this allegation in included only in Count III

(and not incorporated into the remainder of the Amended Complaint), the Court sees no point in making her replead merely to add it to Count II.

      C.      Count III

      Dyncorp argues that Longest's Florida whistleblower statute claim also fails because she made only internal complaints, as part of her job responsibilities. (Doc. 48 at 20). This argument fails in regard to Count III for the same reasons that it failed in regard to Count II.[2]  Finally, Dyncorp contends that Count III fails to state a claim because of the several-month gap between Longest's (apparently) final complaints and her termination. (Doc. 48 at 20).  However, temporal proximity is merely one factor to be considered in determining whether the activity was causally linked to the termination. *See*, *e.g.*, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) ("For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'"). Moreover, the cases cited by Dyncorp for the proposition that "courts have held that several months does not meet the [close temporal proximity] test" contain no such holdings. *See Padron v. Bellsouth Telecomm., Inc.,* 196 F.Supp.2d 1250, 1256 (S.D.Fla. 2002) (finding that "a month or two" gap could constitute close temporal proximity) *and Wascura v. City of South Miami*, 257 F.3d 1238, 1247 (11th Cir. 2001) ( finding that, "[i]n light of the ample legitimate reasons for the termination decision proffered by the City, the truth of which was never effectively challenged, and in light of

---

    [2]The Court also notes that Dyncorp cites *Wallace v. School Bd. of Orange County, Fla.*, 41 F.Supp.2d 1321 (M.D.Fla. 1998) for the proposition that Longest must "affirmatively plead that her reporting activities – both internally and to [the State Department] – placed Defendants on notice that she was engaged in protected activity" under Florida's whistleblower statute. However, that case reached no such conclusion. Rather, Judge Sharp ruled in favor of the defendant school board because the statute did not apply to governmental entities. *Id.* at 1331.

the fact that Wascura adduced virtually no evidence of discrimination, *we cannot conclude that a reasonable jury could find for the Plaintiff based merely on the three and one-half month temporal proximity.*") (emphasis added).  In consideration of the foregoing, it is hereby

      **ORDERED** that the Defendants' Motion to Dismiss Amended Complaint (Doc. 48) is **DENIED**.

      **DONE** and **ORDERED** in Chambers, Orlando, Florida on January 9, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

-13-